**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CAPITALKEYS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-2079 (KBJ) |
| DEMOCRATIC REPUBLIC OF CONGO, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION ADOPTING IN PART THE**
**REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    BACKGROUND**

On April 18, 2013, Plaintiff CapitalKeys, LLC ("CapitalKeys"), a public affairs firm based in Washington D.C., entered into a contract with the Democratic Republic of Congo and the Central Bank of the Democratic Republic of Congo ("Congo" and "Central Bank" respectively; collectively, "Defendants"). (*See* Decl. of Adam Falkoff ("Falkoff Decl."), ECF No. 24-29, ¶ 1.)  Pursuant to the contract, CapitalKeys was to provide Defendants with "government relations and strategic communications services" (Retainer Agreement, Ex. A to Falkoff Decl., ECF No. 24-30, at 3) for a period of five years that began on November 18, 2013, and ended on November 17, 2018 (*see id.* at 5; Falkoff Decl. ¶ 6).[1]  Under the contract's terms, Defendants were to pay the entire contract price of $16,602,000 upon signing. (*See* Falkoff Decl. ¶ 7; Retainer Agreement at 5.)

---

[1] Page numbers citations refer to the page numbers that the Court's electronic case-filing system automatically assigns.

According to CapitalKeys, Defendants made an initial "good faith payment" of $600,000 in March of 2013, before the Agreement was signed (Falkoff Decl. ¶ 3), but failed to pay the balance of the contract price—$16,002,000—on the date that the contract was executed (*see id.* ¶ 9). Nevertheless, CapitalKeys allegedly began providing services to Defendants under the contract, purportedly based upon Defendants' repeated assurances that payment was forthcoming. (*See, e.g.*, *id.* ¶¶ 10, 14–18, 34.) Eventually, CapitalKeys lost patience with Defendants' promises, and on December 1, 2015, CapitalKeys filed the instant lawsuit, asserting common law claims for breach of contract (*see* Corrected Compl., ECF No. 11-1, ¶¶ 42–49), unjust enrichment (*see id.* ¶¶ 50–58), "lost business opportunities" (*id.* ¶¶ 59–64), and "account stated" (*id.* ¶¶ 65–71).

Defendants have thus far not participated in this lawsuit in any respect. They were served with the complaint early in 2016, on the 11th and 12th of February, respectively (*see* Cert. of Mailing, ECF No. 15; Returns of Service, ECF Nos. 18, 19), and CapitalKeys asserts that since it filed this action, Defendants have expressly acknowledged the pendency of this suit in the context of offering renewed assurances that payment is forthcoming (*see* Falkoff Decl. ¶¶ 33–34; Decl. of W. Todd Miller ("Miller Decl."), ECF No. 24-2, ¶¶ 7–8). On April 14, 2016, the Clerk of this Court declared both Congo and the Central Bank to be in default due to their failure to appear (*see* Clerk's Entry of Default, ECF Nos. 22 (Congo) & 23 (Central Bank)), and approximately two weeks later, CapitalKeys filed a motion for default judgment in the amount of $21,618,000, consisting of $16,602,000 for damages under the contract and $5,016,000 for lost business opportunities, plus prejudgment interest at a rate of 6% per

annum (totaling over $2,000,000) and $827.60 for costs (*see* Pl.'s Mot. for Default J., ECF No. 24, at 25–27; Falkoff Decl. ¶ 49; Miller Decl. ¶ 10; MJ Hrg. Tr. at 20.)

On June 14, 2016, this Court referred CapitalKeys's motion for default judgment to a Magistrate Judge for a report and recommendation. The assigned Magistrate Judge, Alan Kay, held a hearing on the motion on October 7, 2016, at which time Defendants failed to appear. (*See* Min. Order of June 4, 2016; MJ Hr'g Tr., ECF No. 26.) Defendants have neither requested that the Court set aside the Clerk's entry of default nor responded to CapitalKeys's motion for default judgment. This Court held a status conference in this matter on April 6, 2017, during which Defendants were absent.

## II. THE REPORT & RECOMMENDATION AND CAPITALKEYS'S OBJECTION

Before this Court at present is the comprehensive Report and Recommendation that Magistrate Judge Kay has filed regarding CapitalKeys's motion for default judgment. (*See* R. & R., ECF No. 27.)[2] The Report and Recommendation reflects Magistrate Judge Kay's opinion that this Court should issue a default judgment in favor of CapitalKeys and award damages in part. (*See id.* at 1, 29–30.) Specifically, Magistrate Judge Kay finds (1) that Defendants have waived their immunity under the Foreign Sovereign Immunities Act, such that the Court has subject matter jurisdiction over this lawsuit (*see id.* at 9–11); (2) that Defendants were properly served under 28 U.S.C. § 1608, and thus this Court has personal jurisdiction over them (*see id.* at 11–12); and (3) that the choice-of-law provision in the parties' contract, which provides that District of Columbia law governs the contract and disputes thereunder, is

---

[2] The Report and Recommendation, which is 30 pages long, is attached hereto as Appendix A.

enforceable with respect to liability and damages (*id.* at 12–13). The Report and Recommendation further opines that CapitalKeys has established that Defendants are liable for breach of contract, based on Defendants' failure to make any payment on the contract beyond their initial $600,000 payment. (*Id.* at 15–17.)

With respect to damages, Magistrate Judge Kay recommends awarding CapitalKeys $16,002,000 in "liquidated damages" (the contract price of $16,602,000 less the $600,000 initial payment) (*see id.* at 18–19), $881,207.45 in prejudgment interest, running from the date that CapitalKeys filed this lawsuit and measured as of the date that the Report and Recommendation was filed (*see id.* at 26–28 & n.8), and $827.60 in costs (*see id.* at 29). Magistrate Judge Kay further recommends denying CapitalKeys's request for $5,016,000 in damages for lost business opportunities, plus interest, on the grounds that CapitalKeys has not presented sufficient evidence to support its claims on this front. (*Id.* at 19–25, 28–29.)

The Report and Recommendation also cautions that any party "fail[ing] to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court adopting such findings and recommendation." (*Id.* at 30 (citing *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).) Under this Court's local rules, any party who objects to a Report and Recommendation must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the Report and Recommendation, and any such written objection must specify the portions of the findings and recommendations to which each objection is made and the basis for each such objection. *See* LCvR 73.2(b).

4

On December 5, 2016, CapitalKeys filed an objection that is limited to Magistrate Judge Kay's recommendation that the Court should award prejudgment interest beginning on the date that CapitalKeys filed suit, rather than on the date that the $16,002,000 payment was due. (*See* Objs. to the Magistrate Judge's Proposed Findings & Recommendations ("Pl.'s Obj."), ECF No. 28, at 1; R & R at 26–27 (recommending that interest be calculated thusly because CapitalKeys unduly delayed filing its suit).) CapitalKeys argues that, contrary to Magistrate Judge Kay's determination that the Court has discretion on this issue, D.C. law mandates that the interest on a liquidated debt such as the one at issue in this case must run "'from the time when [the debt] was due and payable . . . until paid.'" (*Id.* at 2 (quoting D.C. Code. § 15-108) (emphasis omitted).) This Court issued an order for supplemental briefing on various questions related to the damages calculation and the duty to mitigate damages (*see* Order, ECF No. 29), and CapitalKeys submitted its supplemental brief on March 21, 2017 (*see* Suppl. Br. in Resp. to the Court's Order of Feb. 28, 2017 ("Suppl. Br."), ECF No. 30).

## III. DISCUSSION

A court may only enter a default judgment against a foreign sovereign if "the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* § 636(b)(1)(C). This Court has reviewed Magistrate Judge Kay's Report and Recommendation, and with the exception of his recommendation regarding an award of liquidated damages and related prejudgment interest, the Court agrees with Magistrate

Judge Kay's careful and thorough analysis and conclusions regarding CapitalKeys's motion for default judgment. In particular, the Court agrees with the Magistrate Judge that this Court has both subject matter jurisdiction over this case and personal jurisdiction over Defendants (*see* R. & R. at 9–12); that D.C. law governs questions regarding liability and damages for breach of the parties' contract (*see id.* at 12–13); that Defendants in fact breached the parties' contract (*see id.* at 15–17); that CapitalKeys has not established that it is entitled to damages or interest for lost business opportunities (*see id.* at 19–25, 28–29); and that CapitalKeys is entitled to recover $827.60 in costs (*see id.* at 29). Therefore, the Court will **ADOPT** the Report and Recommendation with respect to those issues. However, for the reasons that follow, the Court departs from the Report and Recommendation with respect to the calculation of breach-of-contract damages and the accompanying computation of prejudgment interest.

### A. Breach-Of-Contract Damages

The Report and Recommendation arrived at its recommended damages total of $16,884,035.05 by adding "$16,002,000 in compensatory damages, $881,207.45 in prejudgment interest on the principal unpaid balance, and $827.60 for costs." (*Id.* at 29–30.) The calculation of $16,002,000 in compensatory damages reflected the entire amount that Defendants promised to (but did not) pay CapitalKeys upon signing the contract, in consideration for the entire five-year period of CapitalKeys's services. (*See id.* at 2, 18–19.) The Report and Recommendation characterized the missed payment as "liquidated damages," and treated the entirety of the missed payment as damages to CapitaKeys, notwithstanding the fact that CapitalKeys had not yet performed its obligations under the contract. (*Id.* at 18.) *See Dist. Cablevision Ltd. P'ship v. Bassin*,

6

828 A.2d 714, 723–24 (D.C. 2003) (explaining that a non-breaching party may recover liquidated damages as an alternative to actual damages where the parties have agreed to a valid liquidated-damages clause).

However, upon review of the parties' Agreement, this Court finds that the contract that CapitalKeys seeks to enforce does not contain a liquidated-damages clause; the clause that required Defendants to pay the full contract price of $16,602,000 upon signing did create an obligation, but it did not "determine[] in advance the measure of damages if a party breaches the agreement." *Black's Law Dictionary* 1072 (Bryan A. Garner ed., 10th ed. 2014) (defining "liquidated-damages clause"); *see also The Cuneo Law Group, P.C. v. Joseph*, 669 F. Supp. 2d 99, 112–13 (D.D.C. 2009) ("In assessing whether a provision in a contract amounts to a liquidated damages clause, the Court's first inquiry is whether the clause serves as a remedy for the breach of the contract."). CapitalKeys acknowledges this in its supplemental brief. (*See* Suppl. Br. at 1 ("Plaintiff does not contend . . . that the 'Fee Amount, Expenses and Payment Schedule' clause constitutes a liquidated damages clause in the traditional sense."); *id.* at 2 ("The clause did not set an amount of damages to be paid upon breach, but rather created an obligation to pay $16,602,000 [including the $600,000 that Defendants did pay]; when that obligation was not met, Defendants breached the agreement.").) Therefore, in the absence of a contract that contains a liquidated-damages clause, the Court is required to calculate CapitalKeys's actual damages. *See Dist. Cablevision*, 828 A.2d at 729–30.

Under District of Columbia law, the standard measure of actual damages arising from a breach of contract is the non-breaching party's expectation interest—that is, an

amount sufficient to give the non-breaching party the benefit of the bargain. *See, e.g.*, *United House of Prayer for All People v. Therrien Waddell, Inc.*, 112 A.3d 330, 339–40 (D.C. 2015); *Vector Realty Grp., Inc. v. 711 Fourteenth St., Inc.*, 659 A.2d 230, 234 n.8 (D.C. 1994) ("Contract damages . . . are intended to give the [injured party] the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." (alterations in original) (quoting Restatement (Second) of Contracts § 347 cmt. a (1981))). Expectation damages typically are

> measured by (a) the loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, *less* (c) any cost or other loss that [the injured party] has avoided by not having to perform.

Restatement (Second) of Contracts § 347 (emphasis added). In this case, it is easy to calculate "the loss in value to [CapitalKeys] of the other party's performance by its failure or deficiency," *id.*—that amount is $16,002,000, which is the remaining amount that Defendants were obligated to pay upon signing the contract, but did not. (*See* Retainer Agreement at 5; Falcoff Decl. ¶ 9.) With respect to "other loss, [such as] incidental or consequential loss, caused by the breach," Restatement (Second) of Contracts § 347, as noted above, this Court agrees with Magistrate Judge Kay's conclusion that CapitalKeys has not established its right to recover for any such losses. (*See* R. & R. at 19–25.)

The most difficult component of calculating the actual damages in this case is quantifying the "cost or other loss that [CapitalKeys] has avoided by not having to perform." Restatement (Second) of Contracts § 347. Quantifying this amount is

8

difficult for two reasons: first, it is not immediately clear what point in time the Court should use in order to isolate those future costs that CapitalKeys avoided by not having to perform, since, after Defendants failed to pay the amount due upon signing and thereby breached the contract, CapitalKeys proceeded to perform services under the contract for over two years before filing this lawsuit. (*See* Falkoff Decl. ¶¶ 10, 15.) What is more, CapitalKeys has continued to perform under the contract for nearly two years *after* filing this lawsuit, and it has represented that its performance is still ongoing. (*See id.* ¶ 34.) The second reason that it is hard to quantify the costs that CapitalKeys has avoided under the circumstances presented here is that there is scant evidence in the record from which this Court can infer CapitalKeys's costs of rendering performance under the contract or how those costs are allocated over the five-year contract period.

With respect to the timing issue, this Court concludes that the date of this Court's judgment is the relevant point in time for measuring CapitalKeys's costs, because under District of Columbia law, CapitalKeys was not required to stop rendering services to Defendants either at the point in which Defendants breached the contract or when CapitalKeys filed this lawsuit. The D.C. Court of Appeals has held that "[t]he duty to mitigate [damages] does not obtain so long as the breaching party 'has not definitely repudiated the contract and continues to assure [the] plaintiff that performance will take place.'" *Edward M. Crough, Inc. v. Dep't of Gen. Servs. of D.C.*, 572 A.2d 457, 467 (D.C. 1990) (quoting A. Corbin, 5 *Corbin on Contracts* § 1039 (1964)); *accord Bolton v. Crowley, Hoge & Fein P.C.*, 110 A.3d 575, 586 (D.C. 2015). And the instant record demonstrates that Defendants have never fully repudiated the

9

contract; indeed, there is sworn testimony that Defendants have repeatedly assured CapitalKeys that they would pay the contract price that they failed to pay upon signing, and that such assurances continue. (*See, e.g.*, Falkoff Decl. ¶¶ 9–10, 14–18, 34.) Under these circumstances, then, "[i]t [wa]s not necessary for the plaintiff to take steps to avoid losses" by ceasing its work on the contract or declining to begin performing in the first place. *Bolton*, 110 A.3d at 586. Furthermore, while the D.C. Court of Appeals has not spoken to this particular issue, other courts have held, in essence, that the filing of a lawsuit is of no moment; that is, a plaintiff in a service contract is not required to stop performing services under the contract when its lawsuit is filed. *See, e.g.*, *Tax Matrix Techs., LLC v. Wegmans Food Markets, Inc.*, 154 F. Supp. 3d 157, 172, 184 (E.D. Pa. 2016) (allowing contract claim to proceed in case where "the parties continued to move forward with multiple projects governed by" the contract "even after th[e] case was filed"). Accordingly, the Court will measure CapitalKeys's costs from the date of the Court's judgment—October 6, 2017.

This means that, under the Restatement's traditional framing of expectation damages, this Court must award CapitalKeys an amount that is equal to the unpaid portion of the contract price minus the cost to CapitalKeys of finishing its performance as of the date of this Court's judgment. *See* Restatement (Second) of Contracts § 347. However, as noted above, there is virtually no evidence in the record about CapitalKeys's costs of performance and how those costs are distributed over the life of the contract. Regarding its total costs, CapitalKeys's president Adam Falkoff represented to the Court at the status conference of April 6, 2017—in what amounted to unsworn oral testimony—that CapitalKeys's profits on the contract are "probably

10

around ten percent" of the contract price, implying that its costs were around ninety percent of the contract price (Hrg. Tr. at 35), but no documentary evidence in the record supports that assertion. Moreover, with respect to the allocation of CapitalKeys's costs over the course of the five-year contract period, Mr. Falkoff suggested that CapitalKeys's work was front-loaded (*see* Hrg. Tr. at 36 (Mr. Falkoff stating that "we're almost done" with the work on the contract)), but the contract itself computes the contract price as the sum of equal monthly payments, suggesting that CapitalKeys's costs would be evenly spaced over time (*see* Retainer Agreement at 5 ("Client agrees to pay CK $276,700 per month for professional services (the 'Retainer Fees') for a total of $3,320,400 per year which is $16,602,000 for five years[.]")). None of this evidence inspires confidence, but ultimately, this Court finds, based on the available record, that CapitalKeys's costs were equal to ninety percent of the contract price ($14,941,800), and that they were evenly distributed over the life of the contract. *See* 28 U.S.C. § 1608(e) (providing that a default judgment against a foreign sovereign must rest on "evidence satisfactory to the court"). This means that, as of the date of this Court's judgment, with 407 days, or 22.3% of the contract period remaining, CapitalKeys's remaining costs of performance are $3,330,401.20 (22.3% of $14,941,800).

Accordingly, this Court concludes that the proper measure of CapitalKeys's damages is $12,671,598.80. This amount reflects the unpaid portion of the contract price ($16,002,000) minus CapitalKeys's remaining costs to complete performance as of the date of this judgment ($3,330,401.20).

### B. Prejudgment Interest

Magistrate Judge Kay's Report and Recommendation concludes that the breach-of-contract damages in this case constitute a "liquidated debt," and as a result, that

11

CapitalKeys is entitled to prejudgment interest under D.C. Code § 15-108, which provides that "[i]n an action . . . to recover a liquidated debt on which interest is payable by contract or by law or usage[,] the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable . . . until paid." D.C. Code § 15-108. (*See* R. &. R. at 26–28.) The Report and Recommendation suggests that, although CapitalKeys is entitled to prejudgment interest, the interest should be calculated from the time that the lawsuit was filed—as opposed to the date that Defendants failed to pay upon signing the contract—to account for CapitalKeys's own undue delay in filing this lawsuit. (*See* R. & R. at 27; *see also id.* at 26 (suggesting that "district courts have wide discretion in terms of awarding prejudgment interest").) CapitalKeys objects to this last element of the Magistrate Judge's reasoning, arguing that, in liquidated-debt cases, prejudgment interest must be computed as of the date that the debt was due under D.C. Code § 15-108. (*See* Pl.'s Obj. at 1.)

As a threshold matter, this Court must determine whether the instant case is, in fact, "an action . . . to recover a liquidated debt[,]" which is a prerequisite to the applicability of the District of Columbia's mandatory prejudgment interest statute. D.C. Code § 15-108. "A liquidated debt is one which at the time it arose was an easily ascertainable sum certain." *Steuart Inv. Co. v. The Meyer Grp., Ltd.*, 61 A.3d 1227, 1240 (D.C. 2013) (internal quotation marks, citation, and alteration omitted). D.C.'s liquidated debt statute reflects the common law rule that, where an amount is due and certain as of a particular date such that any delay in payment merely increases the damage to the creditor, "the creditor is entitled to interest from that time by way of

compensation for the delay in payment[,]" and "interest begins to run at once." *Riggs Nat'l Bank of Wash., D.C. v. District of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990) (quoting *Young v. Godbe*, 82 U.S. (15 Wall.) 562, 565–66 (1872)). Notably, to trigger D.C.'s mandatory prejudgment interest statute, the debt must have been for a "sum certain" at the time that it arose, which for purposes of the statute happens only if its size was known to *both* parties at the time. *See Wash. Inv. Partners of Del., LLC v. Secs. House, K.S.C.C.*, 28 A.3d 566, 582 (D.C. 2011) ("Both parties knew exactly how much [appellant] had been paid under the [contract], and thus appellee's award was a 'sum certain.'" (citation omitted)). Moreover, for a damages award to trigger D.C. Code § 15-108, the plaintiff must have "had an immediate right, judicially enforceable[,]" to recover that sum certain at the time that the debt arose. *Riggs Nat'l Bank*, 581 A.2d at 1254.

In this case, even though the amount that Defendants were required to pay CapitalKeys upon signing the contract was certain, this Court concludes that the debt owed was not a "sum certain" in the requisite sense, because CapitalKeys did not have an immediate, judicially enforceable right to the entire unpaid balance ($16,002,000) at the time of the breach, and its damages at that time were unknown (at least to Defendants). That is, if CapitalKeys had sued immediately upon Defendants' failure to pay, CapitalKeys's recovery for Defendants' breach would not have been $16,002,000; rather, its recovery would have been equal to the contract price *minus CapitalKeys's future costs of performance*. *See* Restatement (Second) of Contracts § 347. (*See also supra* Part III.A.)[3]

---

[3] Indeed, the amount of CapitalKeys's damages has been increasing with each passing day, such that the amount the Court awards in this opinion is *more* than what CapitalKeys would have recovered had it

13

When the contract was entered, the amount of CapitalKeys's future costs was unknown to Defendants. (*See* Retainer Agreement at 7 ("[CapitalKeys] will not account for the time or costs or otherwise, of its efforts or payments.").) Furthermore, CapitalKeys itself does not appear to have known what its future costs would be with any exactitude at the time that the contract was signed and the payment was owed. (*See* Hrg. Tr. at 35 (CapitalKeys's president estimating that "[t]he profit is probably around ten percent after it was all said and done").) Thus, because there is uncertainty (both then and now) regarding the amount to which CapitalKeys would actually have been entitled to receive in "an action . . . to recover [the] debt" that was created when Defendants failed to pay, this is not a suit "to recover a liquidated debt," and the District's mandatory prejudgment interest statute does not apply. D.C. Code § 15-108.[4]

Notably, however, CapitalKeys can still avail itself of the District of Columbia's prejudgment interest statute pertaining to breach-of-contract actions involving *un*liquidated debts, which provides as follows:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.

---

sued immediately. This is because the amount of CapitalKeys's future costs of performance—which the Court must subtract in order to arrive at the damages amount, *see* Restatement (Second) of Contracts § 347—decreases as the remaining portion of the contract period wanes, and that, in turn, makes for a larger recovery as time goes by.

[4] There is a line of cases from the D.C. Court of Appeals that explains that a liquidated debt is not rendered unliquidated merely because the plaintiff's recovery is ultimately offset in litigation by a non-sum-certain counterclaim or other entitlement of the defendant. *See, e.g.*, *Wash. Inv. Partners*, 28 A.3d at 582 n.23; *Dist. Cablevision*, 828 A.2d at 731–33; *Giant Food, Inc. v. Jack I. Bender & Sons*, 399 A.2d 1293, 1299–1302 (D.C. 1979). But that situation is different from the one presented here; in the instant case, the setoff against CapitalKeys's recovery—*i.e.*, its own cost of future performance—arises as a matter of contract law in a manner that is inherent to CapitalKeys's contract claim itself. *See Dist. Cablevision*, 828 A.2d at 732 n.25 (noting that "'[i]t is the character of the [plaintiff's] original claim that counts, not the vicissitudes of the lawsuit'" (alterations in original) (quoting 1 Dan B. Dobbs, *Law of Remedies* § 3.6(1) (2d ed. 1992))).

D.C. Code § 15-109; *see also Burke v. Groover, Christie & Merritt, P.C.*, 26 A.3d 292, 304 (D.C. 2011) (noting that this statute "authorizes the award of pre-judgment interest in contract actions where the debt is not liquidated"). "The trial court has broad discretion in awarding prejudgment interest" under D.C. Code § 15-109 so as to fully compensate the plaintiff. *House of Wines, Inc. v. Sumter*, 510 A.2d 492, 499 (D.C. 1986).

This Court concludes that fully compensating CapitalKeys requires awarding prejudgment interest, but not on the full actual damages amount analyzed in Part III.A, *supra*, for the reasons already explained. (*See supra* note 3.) Conceptually, the Court's contract-damages award of $12,671,598.80 can be separated into two components for the purpose of the interest calculation: (1) the profits that CapitalKeys stood to earn on the contract in its entirety, less the amount that Defendants actually paid, which equals $1,060,200,[5] and (2) the costs that CapitalKeys has incurred to date in the course of performing services under the contract, which is equal to $11,611,398.80.[6] This framing of the Court's actual damages award is useful because it separates the total into the amount to which CapitalKeys would have been entitled had it sued immediately when Defendants failed to pay upon signing (profit, minus the $600,000 that Defendants had already paid, or $1,060,200), from the damages that CapitalKeys has incurred only by virtue of its decision to begin performing ($11,611,398.80). The first

---

[5] Mr. Falkoff represented that CapitalKeys's profits on the contract will be approximately ten percent of the contract price, or $1,660,200. (*See* Hrg. Tr. at 35.) Subtracting the $600,000 that the Defendants paid CapitalKeys from that total yields $1,060,200.

[6] Above, the Court found that CapitalKeys's total cost of performing the contract is $14,941,800, and of that total, $3,330,401.20 of costs has yet to be incurred. The difference in these two numbers represents the costs that CapitalKeys has *already* incurred: $11,611,398.80.

15

portion of the damages has been owed from the moment of the breach, and reflects additional harm that CapitalKeys has suffered by virtue of Defendants' failure to pay that amount during the intervening time. *See Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 531 (D.C. 2003) ("The purpose of awarding prejudgment interest as part of the damages for breach of contract is to compensate the creditor for the loss of the use of money over time."). By contrast, the second portion of the damages has been incurred over time and relates to CapitalKeys's continuing performance, and CapitalKeys could have avoided these damages by not commencing performance on the contract (even if it did not have a legal duty to do so). The rationale for awarding prejudgment interest as an element of contract damages—compensating the plaintiff for damages that are solely attributable to the defendant's failure to pay a debt on time— does not apply with respect to this latter portion, which is instead attributable to CapitalKeys's decision to perform despite Defendants' nonpayment and its delay in seeking to recover the debt owed.

Accordingly, this Court will award prejudgment interest only on $1,060,200. The Court will tabulate interest from the date that the payment was due until the date of this Court's judgment at a rate of 6% per year. *See District of Columbia v. Pierce Assocs., Inc.*, 527 A.2d 306, 311 (D.C. 1987) (explaining that 6% is the maximum rate of prejudgment interest under D.C. Code § 15-109 absent a contractual provision setting a higher rate). Thus, the amount of prejudgment interest equals $247,128.26. *See Rastall v. CSX Transp., Inc.*, 697 A.2d 46, 53 (D.C. 1997) ("Absent a contractual provision, prejudgment and judgment interest are not usually compounded.").

## IV. CONCLUSION

After conducting its own review of the record, the Report & Recommendation, and the objection that CapitalKeys has filed, this Court accepts Magistrate Judge Kay's analysis and conclusions regarding CapitalKeys's motion for default judgment, except for his recommendation regarding the amount of damages and prejudgment interest, and thus, it will **ADOPT IN PART** the Report & Recommendation. Accordingly, CapitalKeys's Motion for Default Judgment (ECF No. 24) will be **GRANTED IN PART**, and damages will be awarded as follows:

**Compensatory Damages:** $12,671,598.80

**Prejudgment Interest:** $247,128.26

**Costs:** $827.60

A separate Order accompanies this Memorandum Opinion.

DATE: October 6, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge